PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.

(District Court, S. D. New York.   June 24, 1915.)

Equity 2-9, 2-33, 2-149, 3-37.

1. RECEIVERS ⚖163—CLAIMS AGAINST ESTATE—EFFECT OF ASSIGNMENT TO RECEIVERS.

Receivers for a street railroad company were appointed first in a creditor's suit and afterward successively under first and second mortgages. The receiver of another company filed a claim against the estate which, after negotiations, was assigned to the first-named receivers, who were described in the assignment as receivers under the mortgages. *Held*, that such description was not conclusive as to the rights of the parties, and that, the consideration for the assignment having been paid from the general estate, in part from the earnings of the receivership, the claim could not be proved against the general estate for the benefit of the mortgagees alone, but inured to the benefit of all creditors, and the effect of the assignment was to cancel it.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 312–316; Dec. Dig. ⚖163.]

2. RECEIVERS ⚖148—CLAIMS AGAINST ESTATE—ENLARGEMENT BY ASSIGNEE.

Where an itemized claim filed against an estate in the hands of receivers was afterward assigned, the assignee cannot thereafter enlarge it, either by adding to the items or to the amounts claimed thereunder.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 260; Dec. Dig. ⚖148.]

3. STREET RAILROADS ⚖58—CONSTRUCTION OF LEASE—RIGHT TO RENTALS.

Under a provision of a lease of street railroad property requiring the lessee to pay as rent quarterly dividends on the stock of the lessor company, an installment of rent falling due before the appointment of a receiver, in a suit to foreclose a mortgage against the lessor, *held* to belong to the stockholders, and the right thereto not to have passed to the receiver.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. ⚖58.]

4. STREET RAILROADS ⚖58—INSOLVENCY AND RECEIVERSHIP—CLAIMS PROVABLE AGAINST ESTATE.

A receiver for a street railroad company, appointed in a suit to foreclose a second mortgage, who paid interest on the first mortgage on default of a lessee which was obligated to pay it, may prove a claim for the amount of such interest against the receiver for the lessee.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. ⚖58.]

5. STREET RAILROADS ⚖49—LEASES—LIABILITY OF LESSEE.

A lessee of a street railroad system, including lines leased by the lessor and controlled by it through stock ownership, which control passed to the lessee, *held* liable for failure to keep the controlled lines in repair and

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for taxes and other liens existing when the lease was terminated by insolvency of the lessee.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 125, 126; Dec. Dig. ☞49.]

In Equity. Suit by the Pennsylvania Steel Company and another against the New York City Railway Company and the Metropolitan Street Railway Company, and three other cases. In the matter of the claim of the Third Avenue Railroad Company, No. 44, against the Metropolitan Street Railway Company. On exceptions to report of special master. Modified and confirmed.

The following is the opinion of the special master:

As this memorandum is addressed to counsel having a full knowledge of the facts it will, in the main, be limited to indicating the conclusions upon which the report will be based, leaving the recital of the facts suggesting such conclusions to formal presentation.

The claim of the receiver of the mortgaged premises is against the Metropolitan Company alone, and not against the City Company. It is based on the covenants contained in the Third Avenue-Metropolitan lease of May 13, 1900. Liability for proven breaches of covenants, as alleged, affecting lines and property owned by the Third Avenue Company which it demised is not disputed, but liability respecting such property of the so-called "Controlled Companies" is. That liability is asserted because of a covenant in the lease by which the Metropolitan undertook, "from time to time, to do all the things which shall be necessary to enable the party of the first part (Third Avenue Company) to comply with the provisions of said mortgage," i. e., a Third Avenue mortgage which was prior to the lease. The latter company had agreed in the mortgage that any corporation to which the premises might be conveyed, transferred, or leased should observe the covenants of the mortgage as fully as it was bound to do, and I think that the covenant by the Metropolitan quoted is to be regarded as a fulfillment of this promise, and as an undertaking by the Metropolitan absolute on its face to comply with the covenants of the mortgage. In other words it constitutes a promise by the Metropolitan to the Third Avenue Company, made for the benefit of the mortgage trustee and its bondholders, to observe and perform the mortgage covenants. It is urged, however, that, assuming that there is such assumption, the resulting Metropolitan obligation is not primary, but secondary, being, so far as controlled companies and their property are concerned, undertakings to do the things specified if those companies failed to do them, and that this is so whether the covenants are absolute or conditional in their terms. In view of the opinion of the Circuit Court of Appeals in the Second Avenue Bondholders' Case (198 Fed. 747, 117 C. C. A. 503) it may not be difficult to see that this may be so, not only as to covenants in terms conditional, such as the covenant to pay taxes, but also as to covenants which are absolute in form, such as covenants to keep property of controlled companies in repair or to pay their indebtedness, principal, and interest at maturity, the failure to observe which is the basis of many items of damage claimed. The difficulty is that this contention does not carry the matter very far. The case relied on also holds that contingent liabilities which have ripened into fixed liabilities at the date fixed for filing claims are provable. Here the date fixed is January 15, 1908. The lease from the Third Avenue Company to the Metropolitan Company must now be deemed to have terminated with the expiration of the period of experimental operation which was January 11, 1908. 216 Fed. 458, 132 C. C. A. 518. What the Metropolitan had failed to do on this date, respecting obligations of controlled companies then matured, and care of property then in disrepair, which under lease and mortgage it was bound to do, suggest liabilities within the Second Avenue Bondholders' Case that were fixed on January 15, 1908, whether the Metropolitan was bound conditionally or absolutely. This is obviously so as to matured debt and in-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

terest or accrued taxes (198 Fed. 747), but it is just as clearly so respecting repairs to roadway, track, equipment and buildings. The evidence shows conclusively that the condition of disrepair of these items existed, not only when the lease terminated, but for a long time prior thereto. Indeed, the complete failure of the Metropolitan and of its assignee, the City Railway Company, to discharge its obligations respecting the physical properties in their care for years prior to the receivership is too notorious to be disputed. With the possible exception of the claim for the franchise taxes which were in litigation at the termination of the Third Avenue-Metropolitan lease and on the day fixed for filing claims, and which will be discussed below, items demanded, respecting controlled companies and their properties, set out in the claim as originally filed, suggest, I think, fixed obligations provable as such.

The claim herein was filed by the receiver of the Third Avenue Company in 1909 as of January 15, 1908, and it sets forth items and amounts demanded respecting property both of that company and of its controlled companies. At a hearing on March 15, 1910, a motion was made to strike out testimony of a claim for new cars of the Union Railway Company, a controlled company, and for repairs to its car house which were not specified in the claim as filed, which was granted on that ground, and a counter motion to amend was denied for lack of power. At a subsequent hearing on February 26, 1913, a stipulation was placed on the record that: "No actual amendment of the claimant's claim as filed need be asked for or obtained except in case items have been or shall be offered in evidence of a different character than any item contained in the claim as filed." The taking of testimony was finally closed on January 12, 1914. Thereafter, on February 27, 1914, the claimant petitioned the court for the amendment both in respect to items of a different character than any contained in the claim and as to items of the same character—the amounts of identical items in fact which under the stipulation need not have been asked. As it was asked, those asking it are concluded by the result so far as this stipulation is concerned. The court denied the motion in toto, saying that to grant it "seems wholly inequitable." Thereupon there was filed a petition for a reargument March 30, 1914, which apparently eliminates the items of a "different character" set out in the prior petition, consisting, in large part, of demands for damages to properties of controlled companies not specified in the claim as filed, and asks only for amendments increasing amounts for items which were specified, and this, too, was denied. Notwithstanding, counsel for claimants are now insisting on allowances of amounts in excess of those originally demanded on the strength of the stipulation quoted, although they ask, as to the items of a different character, only that the amount of damages be fixed and reported, but not included in the total of damages allowed, the purpose being to have these latter items liquidated so that they may be ascertained in the event that the Appellate Court shall ultimately grant the amendments. In my opinion no amounts in excess of those originally demanded for items specified in the claim as filed can be reported, notwithstanding the stipulation. On its face, it is merely an agreement that a party need not apply, but a party may waive it, assuming its validity, and apply, as he has here, and is bound by the result. Moreover, it was entered into long before the motions to amend were made, and to give it effect would be to grant the very amendments which the court denied, and which it evidently regards as wholly inequitable to creditors whose claims were duly presented, and who are not parties to it. As to the request concerning items of a character not originally specified, it seems to me that if the motion to amend be ultimately granted, the principle on which the evidence concerning damages is to be viewed will be so definitely ascertained by the result in this and the Metropolitan breach of lease proceeding that counsel will be able to determine amounts by agreement. In any event it is not for the master to report on matters which the court has flatly said cannot be considered.

Limiting myself, then, to the items and amounts set out in claim as originally filed, I take them up in the order in which they there appear, which is followed in claimant's brief.

1. I think that the claim to the first installment of rent, amounting to $239,-927, which accrued October 13, 1907, belonged to the stockholders of the Third Avenue Company under its lease to the Metropolitan; that such claim as Mr.

Whitridge may have had as receiver of Third Avenue properties did not pass by assignment to claimant under the agreement of December 29, 1911, and that it cannot be allowed. The second installment of an equal amount accrued on January 13, 1908, the day after Mr. Whitridge entered into possession of the mortgaged premises, so that it would seem that, as receiver in possession of the mortgaged premises, he was on the day fixed for filing claims—January 5, 1908—entitled to this installment, and that the claim passed under the agreement referred to. It is allowed at $239,937.

2. The interest on the 5 per cent. first mortgage bonds, due on January 12, 1908, but not exceeding the amount demanded in the claim as originally filed, is allowed.

3. The claim as originally filed demands $797,106.67 interest on the 4 per cent. consolidated bonds from July 1, 1907, to January 12, 1908, "less such sum as may be paid to the receiver of the Third Avenue Railroad Company or the receivers of the Metropolitan Street Railway Company for rent or for the use and occupation of the property of the Third Avenue Railroad Company from September 20, 1907, to January 11, 1908, both dates inclusive."

The agreement of December 29, 1911, provides for the payment of $200,000, as part of the consideration, for the use and occupation above referred to, as well as for the other things to be done by the Third Avenue receiver. The agreement does not appropriate the payment to the use and occupation demand, nor to any of the other demands which it settled, but that demand was the only demand which entitled the receiver to a present cash payment in full from the estate of the insolvent lessee. The matter is not free from doubt, but I think it should be assumed that this large cash payment was in settlement of the use and occupation claim, and that its amount should, in accordance with the claim as originally filed, be deducted from this amount claimed for interest.

4. The claim for cars, trucks, motors, and other equipment of the Third Avenue and of the Union Railway Companies is allowed at the amounts demanded in the claim as originally filed, aggregating $394,000; enlarged demands contained in the briefs respecting these items and other properties both of these companies and of other controlled companies not specified in the claim being denied for reasons stated.

5. The amounts demanded in the claim as originally filed for failure to keep in repair rails, tracks, roadway, and structure and pavements in the railroad area of the Third Avenue Company and the four controlled companies therein specified, aggregating $626,000, are allowed, as claimed.

Respecting these items, I may say that the court in the Metropolitan breach of lease proceeding accepted the testimony of the witnesses of the there claimant allowing 15 per cent. for betterments, which the evidence there showed were included in the witnesses' estimates. The same witnesses testify here, and where claimant has proffered others respecting properties not within the knowledge of the former, they have been of like standing and are of equal credibility. The estimates here do not include betterments to any considerable extent, and in any event they tend to show that the amounts demanded in the claim as filed were conservative enough to suggest the amounts allowed exclusive of betterments.

6. Paving claims to the extent that the amounts now claimed are within the amounts specified in the claim as filed are allowed as follows:

| | |
|---|---:|
| Third Avenue Co. | $ 3,800 00 |
| 42nd St. U. & S. Co. | 6,940 27 |
| D. D. E. & B. Co. | 42,082 92 |
| Union Railway Co. | 159 74 |
| Southern Boulevard Co. | 50,000 00 |
| Yonkers R. R. Co. | 14,763 89 |
| Westchester Elec. Co. | 8,500 00 |
| Tarrytown W. & M. Co. | 14,447 37 |
| | $140,694 19 |

These are not taxes, but obligations imposed by a law of the state of New York which the Third Avenue Company in its mortgage unconditionally agreed to meet, which agreement the Metropolitan unconditionally assumed and which had matured on the day fixed for filing. It was not necessary for

claimant to show payment any more than it would have been necessary for the Third Avenue receiver to show it. I think, too, that the transcripts of judgments and reports of masters are sufficient proof of these claims.

7. In the claim as filed the only amounts demanded for failure to keep the buildings repaired were those demanded for Third Avenue buildings ($395,000) and those of the Forty-Second Street Company ($4,000). In addition to these amounts demands are now made respecting buildings of five other controlled companies, which are not considered for reasons stated. The amounts claimed for the five buildings owned by the Third Avenue Company under column A, represent, as I hold, the sums required to put them in that condition of good order and repair required by the covenant. Those under column B, for fire protection, and under column C, for extraordinary repair, were excluded from consideration by the ruling made at the close of the hearings. A similar ruling in the Metropolitan-City breach of lease case has been sustained by the court. In that case the testimony of the same witness proposed here was accepted by it. The testimony as to these five buildings shows damages under column A of $166,171 (subject to verification), which is allowed as the maximum of the damage to buildings of the Third Avenue Company. Damage to the Forty-Second Street Company building has been shown in excess of the $4,000 claimed, but the allowance under the ruling of the court is limited to that amount. I may say in this connection that it is only as to this allowance respecting the five buildings of the Third Avenue Company that the contention of claimants respecting its right to the larger amounts under columns B and C relates, since as to all other demands of a similar character the amount demanded in the claim as originally filed, which under the court's ruling suggests the maximum allowance, is to be recommended.

8. No claim is now made for this item, i. e., for failure to keep the Third Avenue supplied with materials necessary for operation.

9. In the claim as filed franchise taxes aggregating $2,420,575.68 against the Third Avenue and the nine controlled companies are demanded. The amount now claimed with interest to January 11, 1908, is $1,321,790.69. As to these taxes against the controlled companies it is urged that by the very language of the Third Avenue mortgage, that company and by consequence the Metropolitan were only bound to pay them if the controlled companies failed to. But these taxes had all accrued at the date of filing claims, at which time the controlled companies had failed to pay them. It is true that their validity and extent were then being litigated, and that under the lease the Metropolitan was not bound to pay while contesting that validity, but its obligation to pay when that validity was determined had become fixed on that date, and represents a provable claim. I therefore allow the amounts now claimed, subject to verification, with interest to January 11, 1908.

10. The claim for the real estate taxes against the Third Avenue and the three controlled companies, i. e., the Forty-Second Street, the Dry Dock, and the Yonkers are allowed at the amounts stated in the brief of claimant, aggregating $79,613.04.

11. The water rates can be allowed only to the extent of $14,235.97 which is the amount originally claimed.

12. The tax on the Third Avenue Company under section 185 of the Tax Law is allowed at $2,543.33.

13. The percentage of gross earnings is allowed at the amount claimed $52,143.95.

14. The claim for damage and contract claims against the Third Avenue Company and the six controlled companies are allowed at the following amounts:

| | |
|---|---:|
| Third Avenue Company | $ 3,850 00 |
| Forty-Second Street Company | 170,348 27 |
| Dry Dock Company | 47,366 63 |
| Union Railway Company | 104,809 01 |
| Yonkers Railway Company | 55,000 00 |
| Westchester Electric Company | 65,439 12 |
| Tarrytown White Plains Company | 24,058 00 |
| | $470,871 03 |

15. The claims for cash and for the construction and operating stores taken over by the Metropolitan at the beginning of the lease are disallowed. The lease in terms gave over to the lessee the expenditure of this cash, which it nowhere undertakes to return. The construction stores were taken over for immediate consumption, and are not of the kind of property which the lessee undertook to return.

16. The claim for the deficiency is disallowed on the ground that it was contingent on the day fixed for filing claims.

The foregoing disposes of all the items in the claim as originally filed which are now insisted on. The Metropolitan receiver, by reason of covenants contained in the Metropolitan City lease, is entitled to prove against the estate of the City Company in the hands of its receiver certain of the items above allowed. The distributive share paid by the Metropolitan receiver out of unmortgaged Metropolitan assets on the aggregate of the items thus provable against the City estate will, under a recent decision of the court, be the amount recoverable from the City estate, and there remains to be determined what those provable items are.

The foregoing items numbered 1, 2, 3, 10, and 11, allowed against the Metropolitan estate, are not provable against the City estate. The items 4, 5, 6, 7, and 11, as allowed against the Metropolitan estate, are provable against the City estate. The item 9 is provable so far as it includes franchise taxes against both the Third Avenue and the controlled companies for the years 1902 to 1906, inclusive, with interest to September 24, 1907, but only to that extent. The item 12 apparently should be allowed, as should item 13, unless they represent taxes accruing subsequent to October 1, 1907. Remaining items disallowed against the Metropolitan estate are, of course, not allowable.

Proposed reports may be presented accordingly, on which hearings will be fixed.

J. Parker Kirlin, of New York City, for Metropolitan St. Ry. Co.

James L. Quackenbush, of New York City, for New York City Ry. Co.

Dexter, Osborn & Fleming, of New York City, for receiver of New York City Ry. Co.

Byrne & Cutcheon, of New York City, for Pennsylvania Steel Co. and Degnon Contracting Co.

Davies, Auerbach & Cornell, of New York City, for Guaranty Trust Co. of New York.

Geller, Rolston & Horan, of New York City, for Farmers' Loan & Trust Co.

O'Brien, Boardman & Platt, of New York City, for John D. Crimmins and others.

Charles Benner, of New York City, for Ben. S. Catchings and others.

Simpson, Thacher & Bartlett, of New York City, for John I. Waterbury and others.

Strong & Mellen, of New York City, for Central Park, N. & E. R. R. Co.

Richard Reid Rogers, of New York City, for New York City Ry. Co. and Central Crosstown R. Co.

Masten & Nichols, of New York City (Arthur H. Masten, of New York City, of counsel), for receiver of Metropolitan St. Ry. Co.

John R. Abney, of New York City, for Molly Latta.

LACOMBE, Circuit Judge. This is a claim prosecuted by Robinson, surviving receiver, against Robinson, surviving receiver. Why he thus occupies a position not unlike that of Lord High Chancellor

in "Iolanthe" will be apparent from the following statement: On September 24, 1907, under creditors' bill Joline and Robinson were appointed receivers of all the property of the City Railway Company; within a week, upon application of its codefendant in said suit, the Metropolitan Company, they were appointed receivers of all the latter's property. One week later they were, upon application of mortgagee, appointed receivers of the property of the Metropolitan covered by its second mortgage; on March 17, 1908, they were, upon application of mortgagee, appointed receivers of the property of the Metropolitan covered by its first mortgage. On January 3, 1908, the Central Trust Company, as successor trustee under a second mortgage of the Third Avenue Railroad, brought suit to foreclose the same, and on January 6, 1908, the same court appointed Whitridge receiver of all its property covered by said mortgage. Its whole system had been leased to the Metropolitan Company in 1900, and on January 12, 1908, this property was turned over by Joline and Robinson, receivers, to Whitridge, receiver.

[1] The Metropolitan had breached its lease, and the Third Avenue had claims against it for such breaches. By direction of the court January 15, 1908, had been fixed as the last day for filing claims against the Metropolitan estate. Repeatedly after that, upon proper showing, orders were made allowing various claimants to file their claims nunc pro tunc. On January 15, 1910, Whitridge, receiver, verified a claim against the Metropolitan estate, enumerating items and giving figures, which upon presentation the court, on January 17, 1910, ordered to be filed nunc pro tunc as of January 15, 1908. It was filed forthwith, being known as "Claim of Third Avenue Railroad Company No. 44 against Metropolitan Street Railway Company," and claimant began taking testimony thereunder. Subsequently, and shortly after December 29, 1911, this claim, which is the one now under consideration, was assigned by Whitridge, receiver, to Joline and Robinson "as receivers of the property of Metropolitan Street Railway Company covered by its said mortgages, dated [first] February 1, 1897, and [second] March 21, 1902." Of these assignees Robinson is the survivor, and his receivership, under the various decretal orders appointing himself and Joline, has not yet terminated; but on July 27, 1908, Ladd was appointed as receiver of the City Railway Company.

It is the theory of claimant that this assignment transferred this claim No. 44 to Joline and Robinson solely as receivers of the mortgaged property, and for the specific and exclusive interest of the mortgage creditors. Therefore it is sought to prove this claim as an independent one, belonging exclusively to mortgage creditors against the general estate.

Although the mortgage creditors held such security as their mortgages afforded, and could prove against unmortgaged assets for any deficiency on foreclosure, they could also, if they chose to do so, buy up the claim of any other person against such assets if they could get it cheap enough to make the speculation apparently profitable. If they had thus bought this claim, they could prosecute it exactly as the original claimant could. Apparently that is the position for which the

present claimant contends, but it is thought that the facts do not support such contention.

The estates of the three railway companies had various claims against each other; it was desirable that these should be adjusted in some way, and Whitridge, receiver, was especially anxious to secure adjustment so that some reorganization of Third Avenue property and interests might be effected. After long negotiations the receivers of the three estates finally entered into an agreement (December 29, 1911) for such adjustment. Whitridge, receiver, agreed to turn over this "claim No. 44" to Metropolitan receivers, executing an assignment of it himself and fortifying such instrument by assignments executed by the old and the new Third Avenue Companies, by the purchasing committee and by the Third Avenue mortgage trustee. Joline and Robinson, receivers, agreed to turn over to Whitridge, receiver, $200.000 in cash and all claims of Metropolitan against Third Avenue. Ladd, receiver, agreed to turn over to Whitridge, receiver, several hundred thousand dollars, face value of notes and open accounts due to it from the various "controlled companies" (i. e., companies of which the Third Avenue owned the stock), for moneys expended before receivership by the City Company in operating, maintaining, and improving the property of those companies. This agreement was approved by the court and fully carried out. The assignments to Joline and Robinson, receivers, described them "as receivers of the property of the Metropolitan Street Railway Company, covered by its said mortgages dated February 1, 1897, and March 21, 1902." The use of this quoted phraseology is not conclusive as to the rights of the parties; what was actually done is quite as important as what was said or written. Not infrequently an obligation from a debtor to a creditor is liquidated and discharged by assignment of such obligation to the debtor by the creditor, and it is the opinion of the court that this is what happened when Whitridge, receiver, assigned his "claim No. 44" against the Metropolitan to the Metropolitan receivers. It is apparent from the language used that the parties to the agreement of December 29, 1911, expected that for some purposes the claim should survive; but to the proposition here contended for that it survives as the sole property of the mortgage creditors of the Metropolitan to be proved as a claim against its general estate, thereby reducing the dividend payable to other general creditors, I cannot assent—it seems too inequitable. The mortgage creditors did not put up the consideration which Whitridge required for his assignment. The $200,000 cash was paid from general funds of the receivership, produced in part by receivers' operation of the road; cash could come from no other quarter. Whether or not some of the Metropolitan claims against Third Avenue which were turned over to Whitridge, receiver, were covered by the Metropolitan mortgages is not important; manifestly not a dollar of the hundreds of thousands due to the City Company by the controlled companies was covered by any Metropolitan mortgage. It seems equally manifest to one familiar with the situation that the elimination of these claims was an important element of the consideration which induced the transfer; Whitridge was receiver of the most important of these controlled

companies, and was desirous to get their affairs wound up. I am not persuaded by the argument that this assignment was paid for out of the funds of the mortgagees, and, that being so, see no reason to hold that they may prove it for their sole benefit as a claim against the general funds of the Metropolitan estate.

The logical conclusion would be to refuse to confirm the report and to enter an order dismissing the claim. To do so, however, would leave other questions undetermined, and, should the Circuit Court of Appeals take a different view of the situation, would probably delay final adjustment. It seems wiser briefly to dispose of the various questions presented here by the exceptions, to modify the report of the special master accordingly, and then to confirm it pro forma. Appeal and cross-appeal will then bring up every question in the case for final disposition.

[2] The special master limited receivers under the various items to the amounts specified in the filed claim; to this exception is taken. As has been stated, the claim is a detailed one, asserting the right to recover specific sums of money for specific items of alleged damage. Repeated efforts have been made to enlarge this claim, in part by increasing the amounts of money damage specified, in part by adding new items. Every such effort has been defeated by the special master and the court. The claim is now exactly what it was when the agreement of December 29, 1911, was entered into by the receivers of the three estates. As the claim was the subject-matter of such agreement, it must be presumed that its details were fully understood by all of the parties to the agreement, and that such agreement was entered into on the strength of such understanding. It seems to this court—as it always has seemed—grossly inequitable to allow the assignee of this claim, after the agreement has been carried out, to amend any one of its items so as to increase the amount asserted to be payable therefor. The special master was entirely correct in confining his award to the items and amounts demanded in the claim filed in January, 1910.

[3] The special master correctly held that the installment of rent under the Third Avenue-Metropolitan lease falling due October 13, 1907, belonged to the stockholders; no other conclusion seems possible under the decision of the Circuit Court of Appeals in Metropolitan Stockholders' Appeal, 198 Fed. 761, 117 C. C. A. 503. Such rental, therefore, was not part of the property covered by the Third Avenue mortgage, did not go to Whitridge, receiver, under foreclosure suit, and did not pass by his assignment of his filed claim. None of the other assignments in evidence were competent to pass any live claim against the Metropolitan estate, because none of these other assignors filed any claim at all within the time limited; none of them ever subsequently obtained (as did Whitridge, receiver) an order allowing claim to be filed nunc pro tunc; none of them, so far as the court remembers, ever made any application for such an order. I do not see how the circumstance that Whitridge, receiver, took possession of the road one day before the due date of the next installment (January 13, 1908) changes the situation. The exception to the disallowance of the first

item of rent is overruled, and the exception to his allowance of the second item is sustained.

[4] The next item allowed and excepted to is the interest on the underlying first mortgage of Third Avenue road, which has always been promptly paid by some one, so as to avoid foreclosure. Presumably the installment falling due January 1, 1908, was paid by Whitridge, receiver, to preserve the interests of the second mortgage, in foreclosure of which he was appointed. Under the Third Avenue-Metropolitan lease a failure of the latter to pay interest coming due under the first mortgage would give to the Third Avenue a chose in action which would be covered by the second Third Avenue mortgage. The exception to allowance of this item is overruled. The special master's disposition of the item of interest on 4 per cent. mortgage bonds is also approved, and exception thereto is overruled.

[5] The question as to liability for failure to keep the property of the so-called controlled companies in repair and to pay taxes and other liens thereon has been vigorously disputed. These companies were, no doubt, not only separate legal entities, but were in fact separately operated. Nevertheless, and despite the decision of the Court of Appeals in the Second Avenue Bondholders' Case, 198 Fed. 747, 117 C. C. A. 503, I am inclined to think that the obligation of the lessee (Metropolitan), which through stock control itself managed these companies, was itself to make good any of their deficiencies which were found existing whenever the lease terminated. The exceptions dealing with this branch of the case are overruled.

There are various exceptions to the special master's allowance for necessary repairs to cars, trucks, motors, rails, tracks, etc.; also to buildings. It is not necessary to go into the details of the controversy as to the degree of repair which the lease requires, nor as to the conflicting testimony as to the cost, nor whether the special master should have adopted the figures in the A or in the C column of estimates. He has limited his allowances to the amounts specifically stated in the filed claim, which generally are less than the sums given in either column of estimates. Since the court is satisfied that he correctly thus restricted the amount of recovery, it will be sufficient to overrule all exceptions to these items. Concurrence may be noted with his construction of the clauses in the lease relating to buildings; it seems in accord with the decision of the Court of Appeals in the Metropolitan-City breach of lease proceeding.

Exceptions as to disallowance of claims for cash and operating supplies, supplies on hand at the date of the lease, are overruled for the reasons given in the report. A similar disposition is made of exceptions to disallowance of claim for deficiency on foreclosure of Third Avenue mortgage. The prior decisions of the Court of Appeals in these proceedings seem conclusive on this proposition.

Any other exceptions not specially mentioned are overruled; and, as above indicated, the report as modified by the views expressed supra is confirmed.